Good morning, and may it please the court. I'm Elizabeth Newman, representing Mr. Lopez-Lopez, the appellant. I'd like to focus on the Booker issue in this case. Ms. Newman, before you get launched, do you happen to have your debriefs with you? I do, Your Honor. Would you get them, please? Certainly, Your Honor. When I was reading the briefs in this case, a couple of things caught my eye. You were the author of the appellant's briefs, is that correct? Yes. And the opening brief was filed August 5th of Ott 5. And at pages 6 and 7, you state a summary of the argument on the first issue. Yes. Which says effectively that Almondarez-Torres has been impliedly overruled by the Supreme Court. Yes, Your Honor. Well, wait a minute. The track isn't quite complete. Then, after that, the Ninth Circuit decided on August 24th, decided the case of U.S. against Whelan, a case opinion written by Judge Gould. And in that case, it came up under the Armed Career Criminal Act that the same argument was made. And this court said that Whelan's argument is foreclosed by Almondarez-Torres versus United States. And then in a footnote, it says, Although recent Supreme Court jurisprudence has perhaps called into question the continued viability of Almondarez-Torres, we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that court. So then the United States files a brief on September 26th in which it cites the Whelan case and says that ends the discussion of the Almondarez-Torres issue. So then when I read that, I picked up your reply brief. Yes. And read the table of authorities, and Whelan does not cite it. That's correct, Your Honor. I thought that maybe you simply did not respond to the attack on your first issue, but you did. And at page three, you say, But more broadly, the question raised in the opening brief is not whether Mr. López López admitted to a prior conviction, but whether Almondarez-Torres versus United States could stand even if he had so admitted. The answer is that under the Supreme Court's evolving case law, it could not. Never do you cite the Whelan case. So my question to you is, are we to regard this as a question, as kind of a policy of your office not to respond to contentions that there's controlling authority in the field which eliminates your argument? Or how are we supposed to look at this? Certainly not, Your Honor. And I do apologize for having not responded either to the government's argument, either by trying to distinguish Whelan or by conceding that the argument is no longer a live one, and that is certainly the position I would take at this moment. And when the Court began its recitation of the history of this argument, that was going to be my response. I do regret having put the Court to the trouble of reading an argument that I now would concede, of course, is one that is only preserved for further review by the Supreme Court. And that would have been the appropriate response in the reply brief? Yes, it would have. But it is not a policy of your office to do what you did in this case? No, Your Honor. To overlook authority? No. That's certainly not a policy. That is my own fault, and I do apologize to the Court for that. All right. Thank you. Turning then to the Booker issue, Your Honor. The Booker issue in this case is to do with the courts having converted U.S. versus Lippmann, in which this Court clearly said that if an illegal reentry defendant returns to this country because of cultural assimilation, because of family ties, then that person's culpability is less because he has returned for non-economic reasons and returned for reasons other than the opportunity to commit any crimes. And his character is also less tarnished because he has returned for motives that everyone can understand, motives of love and concern. Here the district court did not consider the mandate of Lippmann. It converted this argument into an aggravating factor. For the district court, someone who returns, who has strong family ties to this country, who has family here, who has ties of love and affection here, is not a less culpable person but someone who deserves a higher prison sentence than a person who returns to this country for other reasons. Because in the district court's formulation, it's not a big river. If you didn't put the person in prison or do something, he'd be back the next day, so you really have to do something. And later when the defense counsel attempted to persuade the court, that was incidentally on excerpts page 33, and later when defense counsel attempted to persuade the court or raise with the court that Mr. Lopez Lopez really was returning only to be with his family and that the 70-month sentence that the court seemed to be leaning towards was really too harsh in this case, the court said that basically the more reason somebody has to come back here, the less I will sentence him, you're asking for trouble. The guy doesn't have any reason to come back. You don't have any reason to put him in prison at all. He'll be gone. It's the very guy that's going to come back that creates a problem for all of us because he wants to come back. And so for the court, what this court has said very clearly is a mitigating factor, a mitigating factor. If it is found, for this district court, it was an aggravating factor. Now, as I read Cantrell. Isn't all of that really saying what I got from that is the district court says, we have to deter this defendant from coming back. And a couple of hours in prison isn't going to do that. And he looked at the length of time as a deterrent for the defendant, not disregarding family ties, but simply saying something has to keep this guy from coming back because he's not entitled to come back. That's the way I read it. I agree that it's possible to read that that way. And I think that if we ask the district court, what did you mean by that, this district judge might say exactly that, Your Honor. But this court has said that the ties that one has to this family, to this country, if one is not legally resident here, are not to be considered as a reason for a higher sentence, but as a reason potentially for a lower sentence, because they diminish the culpability and besmirch that person's character less. And as I read Cantrell, Your Honors, the courts, the district court's first duty is to calculate the advisory guideline range, including, I would submit, based on the Crosby decision, the court's departure authority. And under Cantrell, review for that is de novo. And the district court here really didn't do that because in construing its, what would have been its departure authority in a pre-Booker context, it construed an aggravating, a mitigating factor as an aggravating factor. I mean, rule, even Rule 3553A, I mean, requires consideration of a defendant's history and characteristics of which this is one. And I think that when a district court is looking to its sentencing decision, it has to reconcile what the record says about this person with the sentencing decision that it's formulating. And if it can't, if on review this court is unable to reconcile what the record says, that this person has family ties, that this person has loved ones here, and that this person is therefore, under this court's formulation in Litman, less culpable, a less bad person, if you can't reconcile that with what the district court said about its sentence and its way of coming up with a sentence, then the process by which the sentence has been calculated is incorrect. I think that there may be cases in which, I mean, it's always possible, I think, or nearly always possible to say that a factor that ought to be considered aggravating may be considered mitigating and vice versa. I mean, it's hard to imagine any factor that can't be turned inside out under various circumstances. And I think perhaps it's up to this Court on a more generalized case-by-case basis to say that this factor or that factor is generally a mitigating one or generally an aggravating one, or in this context is generally a mitigating one, while in that context may be generally an aggravating one. But in this case, with Mr. Lopez-Lopez, the Court's already spoken and has said that family ties, cultural assimilation, is not an aggravating factor. It's a mitigating factor. When he came to Mr. Lopez-Lopez, he came to the U.S. around 1987. How old was he at that time? In 1987, Your Honor, he would have been approximately 19. The pre-sentence report shows he was born in 1969. On the other hand, he's raised four children, four citizen children, I believe, in this country as his own. They were his girlfriend's biological children, but there was some very moving evidence in the record about how he had loved and cared for them. He was an outsider in Mexico, according to his counsel's statement, supported by the PSR at sentencing, because his family there considered him responsible for his mother's death, since she had died while giving birth to him. They had ostracized him to the point that he'd run away and begun to live on his own at the age of 10, and had ultimately made his way to the United States, where he had a very substantial work history. I'm not discounting his criminal record as well, but he did have a very substantial work history in addition to that, as a very humble worker, since he had, I think, only three years of formal education. Maybe it was six. But he had tried his best to provide for the family he had created for himself here. And as sentencing counsel said, both in his sentencing papers and again at argument, this case is about a man who wanted to come back to his family, and that a 70-month sentence under those conditions was too harsh. That was the sentencing argument. So I think discounting the age at which Mr. Lopez had arrived in this country, I think the more appropriate focus is the life he had created for himself here, and his lack of resources, I mean emotional ones, in Mexico. We've gone over time. Sorry, Your Honor. Thanks. We occupied you with our questioning, and so we'll give you another two minutes for rebuttal. Thank you, Your Honor. You're welcome. Thank you. Mr. Omhoff. Good morning. Matthew Omhoff on behalf of the United States, and may it please the Court. The sentence that the district court levied in this case should be affirmed because, first, the sentence was reasonable. It was at the low end of the undisputed guideline range. Second, it was constitutional under Almendores-Torres and Apprendi. And third, the sentence included a supervised release reporting condition that did not implicate the Fifth Amendment. For the two latter issues, first of all, the Almendores-Torres issue, the government does believe it's been resolved by Waylands, and I won't address that unless you need to. The counsel said it's off the table. Yes. And as far as the supervised release condition, my colleague, Ms. Kassestein, is far smarter and more articulate than I am, so I'm going to let her arguments on that sit with the Court unless the Court has questions at all. Well, does anyone want more argument on that? We're happy to rely on your colleagues. Why is the Fraud Section dealing with this argument? Sometimes the cases in the way that they're assigned, the 1326 cases in particular, go all over because there's a number of them. They go all over the office, Your Honor. I was just curious. Sure. Sure. Okay. And so focus on the reasonableness Booker issue. And I think what Just a preliminary question on that, if I may. Yes, Your Honor. This sentence is within the guidelines range. Correct. You know, we've had a number of cases where we've issued rulings where the government has not raised any issue about jurisdiction. Yes. But yet we had pre-Booker authority that said there's no jurisdiction to review a challenge to a sentence in the guidelines range. Yes. So I don't mean to sandbag you in this because in another case, there may be an order coming out asking for a briefing from the Justice Department on it. But, I mean, what is the general position of your office on that issue? And I'll start by saying we did not address that issue in this brief and, in fact, conceded jurisdiction. However, our brief in this case was written soon after Booker was decided And on further reflection on the issue of jurisdiction, our office has concluded that under 3742A, this Court does not have jurisdiction to review a reasonableness sentence, and here's why. Under 3742A, there are four circumstances under which this Court has jurisdiction to review a sentence. The first is whether the sentence was imposed in violation of law. The remaining three factors address whether the sentence was within the guideline range and they address guidelines issues. And so under the circumstances in this case where, in fact, it was at the low end of the undisputed sentencing guideline range, the defense did not at sentencing dispute any of the sentencing calculations, we're left only with the issue of whether this Court has jurisdiction in this case and whether this reasonable sentence within the guideline range can be considered imposed in violation of law. Does Booker require us to assess whether the balance of the 3553A factors is reasonable? The government's position on 3742A is that Booker didn't change it. And pre-Booker, the way 3742A1, the imposed in violation of law jurisdictional requirement, was interpreted, it was interpreted as if the sentence is unconstitutional or if the sentence is outside the statutory range or if there's some fundamentally illegal impermissible purpose involved in the sentence. The reasonableness, however, the reasonableness piece is more of a question of the exercise of a judge's discretion, of a district court judge's sentencing discretion. And our office's position is that given the fact that the sentence here was within the statutory, it was constitutional, and it was within the guidelines, the reasonableness issue really isn't a question of whether it was imposed in violation of law, but it's really a question of whether the sentencing judge exercised his discretion correctly, which is precisely where we were before. Sure. If I could stay there for a second. I guess in a nutshell, then, the government's position is that when the statute refers to law, that Booker is not law. Correct, Your Honor. In the sense of the statute. That the reasonableness determination is not law. It's an exercise of sentencing discretion just like before under the guidelines. And so for that reason, the government does contend that the jurisdictional issue is in play. To return to the issue of reasonableness, we are in what this Court has referred to as the second stage of the Booker analysis, which is we're not dealing with a question of whether the sentencing guidelines calculations were off. We're solely focused on reasonableness. And we start here as the Court has instructed us and as many other courts have instructed with the guidelines. The government's position is that the guideline sentence is a presumptively reasonable sentence. The Seventh Circuit has held this. I realize that this Court in Guerrero-Velasquez actually put it in a footnote, and then I think within the last two days took out the fact that a guideline sentence is presumptively reasonable, took out that footnote. But the government's position still is that we started here with a presumptively reasonable sentence. If you look at what the district court judge here – Can you base reasonableness solely on the statute or is it really a judgment call as to the application of the statute? I think it's the latter, Your Honor. I think it's the latter. And there's nothing in the statute that says that a sentence within the guideline range is presumptively credible because it's based on no fact other than the guideline facts, high or low. Well, but implicit in all of the guidelines, Your Honor, is the fact that the Sentencing Commission – and this is reflected throughout the legislative history of the guidelines as well as this Court's decisions and others – that the Sentencing Commission took into account all of the 3553 factors in coming up with its calculations. And so implicit in all the guidelines calculations are the 3553 factors. And so under those circumstances, we're not just crunching numbers here. These are people who – the Sentencing Commission is a professional commission that thinks about these – every single one of these sentences and these guideline numbers far more than any of us do. And they came in their reasoned conclusion to sentences that made sense. And so I don't think – Without naming names, I know several district judges that think the whole thing is outrageous. And I understand. That is true, Your Honor. But if the question is reasonableness, the considered conclusions of the guidelines, I don't think we can say that a sentence based on the considered conclusions of the guidelines is presumptively unreasonable. I don't think we can say that. No, I don't say it's unreasonable or reasonable. I think you have – the Court has to take a look at the facts underlying the sentence. Which is precisely what happened here, Your Honor. And I think if you – It's not presumed or not presumed. It's neither presumed nor not presumed. And I understand that, Your Honor. And I understand your point there. The government's position still is that if we're starting off with – Well, you're asking for a leg up. And you're asking for an evidentiary rule of universal application that gives the government the upside of the case. It gives the government – given the fact that the sentence – You put the burden on the defendant to prove it's unreasonable. That's what you're doing. In some ways, Your Honor, we're starting with – it's not necessarily a burden shifting so much as here we are where it's presumptively – It does start the sentence with a presumptive reasonableness. The presumption requires the other party to go forward with the evidence. Correct. That's a fair statement. I think that's correct, Your Honor. And it's not the government who's trying to impose the sentence that has the burden of showing by the evidence at the outset that it's reasonable. I think it's – more than anything, it's an analytical perspective for this Court. It's not so much – at the district court level, of course, all the 35 – we need to start with a guideline, certainly. This Court has held that. And so we need to start with a guidelines analysis. I think the guidelines merely need to be considered. I don't think they're binding on the district court system. The guidelines certainly need to be considered and a calculation needs to be made. And I think this Court has made it clear we have to start there. And that's what the district court did here, but it went further and considered all the factors that I think you, Judge Beezer, are concerned about. If you read the sentencing transcript here, Judge Letts was very careful and he gave a preliminary discussion of his initial take on the case, which was that this was an individual who had been – come back to the country – come into the country illegally twice. And every time after he'd come back, he'd engaged in crime. That was the aggravating factor here. And so when the defense raised the issue of he's got family ties here, Your Honor, that's why he's coming back. The court responded, actually, that cuts both ways. And as Judge Nelson pointed out, in doing so and in making the observation that so troubles the defense in this case, which is only two sentences and a rather lengthy consideration of the facts, in doing so, the court tied it to a specific factor set forth in 3553A2B, which was the issue of deterrence. So what the judge was saying is, okay, I understand that he has family ties, but it cuts the other way. And he tied it directly to a permissible factor under 3553. If you look very closely at what the court did, and if we move to Lipman, which is the case relied upon by the defense, the sole issue in Lipman was whether the district court believed it had the authority to depart under the guidelines. The district court here – and in that case, actually, the district court said, on the record, I don't think I can – I don't think that I can find, under these circumstances – he actually said, I cannot find that the tie, the cultural assimilation to the U.S. society is a ground for a downward departure. A very troubling statement if you're looking to find out whether the judge believed he had authority. That's what the district court said in Lipman, and the district court in this case said nothing like that. It never made anything close to a legal conclusion about whether it was permitted. Rather, it made a factual observation that was not unreasonable, and again, tied to a 3553 factor. If you look beyond just that statement, and again, in Lipman, like in this case, the defense had a particular statement that the judge made that concerned it and suggested that it had done something hinky as to the factors that were looked at. The court said, we're not going to just look at that one statement. We're going to look at that statement in context, and in the specific context of the case. The court held that the district court had, in fact, considered the specific facts of Lipman's case, and that's precisely what happened here. The court went from saying, you know, this issue of family ties cuts both ways, and then it went on to talk about how he had come back, and when he'd come back, he hadn't done things that were designed to help people, and by that, he meant the crimes. The 1996 crime for possession of a concealed weapon and displaying it to a police officer, the 1998 crime, which was the first degree burglary in which he had a deadly weapon, and then, after his deportation in 1999, following his imprisonment on that, he came back in 2002 and committed three new crimes, corporal injury on a spouse, willful infliction of cruelty, and possession of a controlled substance. And so those were the facts before the district court, and it very reasonably concluded under the circumstances that the reason this man came back wasn't necessarily family ties, and the more troubling fact was even if he was coming back for family ties, he was coming back and committing all of these crimes. I see I'm over time here, so I'll rest unless the Court has any other questions for me. If people have questions, we can, if the judges have questions, we'll go further. Thank you very much for your time. Thank you. Your Honors, I'd like to take issue with, I think, just two things that the Government Council has said. First, that the Sentencing Commission has taken all the 3553A factors into consideration. I would point the Court to Judge Wardlaw's concurrence in the Ameline on Bonk decision, which does emphasize that the sentencing commission has taken all the 3553A factors into consideration. The Sentencing Commission, at least in its guideline, in the guidelines, has not taken the 3553A factors into the kind of consideration that the district courts can now consider, in that, for example, the guidelines prohibit altogether consideration of certain factors, permit consideration of other factors only under extraordinary circumstances, whereas now under Booker, the 3553A factors permit consideration of the factors really without limitation, as I think Ms. Katzenstein stated in her argument to the Court this morning. Counsel, when you have a single judge that writes separately, it's not the opinion of the Court, and it's not precedent. Certainly not, Your Honor. I would only point to the fact that it's not going to give you any legal standard here to argue what one judge may think. Oh, no, Your Honor. I'm only using it to present the Court with an argument that I recognize the Court is certainly free to adopt or reject, that this is an opinion about what the sentencing guidelines do take into account or do permit or don't permit. And, of course, there is other authority, of course, not binding on this Court, that says the same thing. Let me direct your attention to a slightly different issue. Certainly. And I'm only one judge here, but I'm sorry, Mr. O'Malper, I'm not sold on the presumptive reasonableness theory. I know some other circuits have gone that way, but it's not persuading me. But there is an issue that hasn't been addressed here by the appellant, and that is when we look at the balance of the 3553 factors by the district court, doesn't this have to be a discretionary decision? In other words, aren't we essentially looking at whether the district court, in making that balance, abused discretion in sentencing? There's no Ninth Circuit precedent that frames the standard in those terms, but in an opinion that I was involved in, we did use the term relating to the district court's discretion. And it strikes me that that's got to be the answer after Booker. But I'd like to hear if the defenders feel it's not a discretionary thing. I read Booker in part as making clear that the sentencing courts have some discretion here. I just can't understand how we could denoble review all the factors in each case. I agree with the court to some extent, and let me preface my remarks by saying that I don't believe that we defenders have a unified position at this point on exactly whether reasonableness translates into abuse of discretion or not. I think the court is correct in that, insofar as Booker does give some leeway to the district courts that was not given to them before. On the other hand, I would go back to something I said up here earlier, which is that I think that this court's obligation on review is to reconcile the information in front of the district court with the sentencing decision that the district court actually made. What I mean to say is I think that this court needs to conduct a more searching review than simply saying that because there was a reason, we're done. That the reason has to be reconcilable with the information in front of the district court, or it's not reasonable. The process by which the district court has to make some decision has to be in some way reviewable by this court, although I recognize that no one can really say what degree of articulation at this point would be necessary on the part of a district court. But enough to let you review it, surely. Thank you, Your Honor. We thank both counsel for their fine arguments. And U.S. v. Lopez-Lopez is submitted. So we thank you all. And we'll adjourn. All rise. This court for this session stands adjourned. Thank you.
judges: Beezer, T.G. Nelson, Gould